UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCHAFFER DAVIS,

      Plaintiff,                                      Hon. Robert J. Jonker

v.                                                    Case No. 1:23-cv-426

MED-1 OCCUPATIONAL HEALTH
SERVICES,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

      Plaintiff Schaffer Davis, proceeding pro se, filed a complaint against Defendant Med-1 Occupational Health Services on April 26, 2023. Plaintiff was granted leave to proceed in forma pauperis, and the complaint was served on Defendant. Plaintiff alleges that the Court has jurisdiction over this matter pursuant to federal question jurisdiction and diversity jurisdiction. (ECF No. 1 at PageID.3–4.) Plaintiff's claims arise out of the events surrounding his April 18, 2023 presentation to Defendant for a random drug test ordered by the Department of Transportation (DOT) and/or his employer. Liberally construed, the complaint alleges that: (1) Defendant discriminated against Plaintiff on the basis of his race in a public accommodation, in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.* (Title II); and (2) Defendant defamed Plaintiff under Michigan law.

      Presently before me is Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1), (4), and (6). (ECF No. 7.) The motion is fully briefed and ready for decision. For the reasons that follow, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED** and that the complaint be **DISMISSED**.

# I. Background

As of April 18, 2023, Plaintiff was employed as a truck driver by Sweet Express in Grand Rapids, Michigan. On that day, Plaintiff went to Defendant's Holland, Michigan, location for a random drug test that his employer had requested. An unknown female employee asked Plaintiff to present his identification. The employee gave Plaintiff paperwork, which he completed, and sat down in the waiting room. After a short time, the female employee called Plaintiff to give a urine sample. Although Plaintiff said that he was not ready, the employee insisted that he walk with her back to the testing area. (ECF No. 1 at PageID.5–6.)

At the testing area, the female employee asked Plaintiff to remove everything from his pockets and wash his hands. When Plaintiff finished washing his hands, he was given a new collection container for his urine sample. Because the employer had requested an observed drug test follow up, a male employee was assigned to observe Plaintiff as he produced the urine. Plaintiff attempted to produce the sample for about two minutes, but then informed the male employee that he was not "ready" to provide a sample. The male employee advised the female employee that Plaintiff was not "ready" to test. Plaintiff was allowed additional time and sat down in the waiting area. (*Id.* at PageID.6–8.)

A few minutes later, Plaintiff told the female employee that he was "ready" to give his sample. The employee then escorted Plaintiff to the testing area, instructed him to empty his pockets and wash his hands, and gave him a new collection container. The female employee again advised Plaintiff that the test would be observed by a male employee. Plaintiff then entered the collection room, and the male employee moved very close to Plaintiff to observe Plaintiff's pelvic area while Plaintiff gave his sample. At first, Plaintiff was unable to produce a sample, but after several minutes he was successful. When Plaintiff and the male employee exited the room, the female employee loudly exclaimed in front of a video surveillance camera mounted on the wall

that Plaintiff "had a device on him," and told Plaintiff to put the sample down. (*Id.* at PageID.9–11.) Plaintiff returned to the testing room, and the male employee asked Plaintiff to lift his shirt and lower his pants. The male employee exited the room and told the female employee that he did not find a device. Nonetheless, the female employee refused to accept the sample. (*Id.* at PageID.11–12.)

Plaintiff returned to the waiting room once again, and a short time later he was allowed a third attempt at the drug test. Plaintiff went to the back of the building and began to empty his pockets, but a second female employee (different from the first) told Plaintiff that he did not need to empty his pockets because the test would be observed. Plaintiff then washed his hands and the female employee gave him a new collection container. Plaintiff entered the testing room and a second male employee moved close to Plaintiff to observe the collection. After Plaintiff was finished, he and the second male employee exited the room and Plaintiff placed the container on the counter. The second female employee examined the sample and said that it was "not enough." Plaintiff responded that he had produced all the urine that he could and said that he would take the test at another location. (*Id.* at PageID.13–15.)

Plaintiff drove to Defendant's Breton Road location in Grand Rapids, Michigan. When he was called for his test, he was told not to empty his pockets and to wash his hands. The unknown male employee advised Plaintiff that the test would be observed. While Plaintiff was attempting to produce urine, the male employee moved very close to Plaintiff to observe him producing urine. The male employee began to argue with Plaintiff and demanded that he raise his shirt. After Plaintiff complied, the male employee exited the room. Plaintiff then left the premises. (*Id.* at PageID.15–18.) Plaintiff alleges that as a result of Defendant's refusal to accept his sample based on its accusation that Plaintiff had a "device" on him and its report to the DOT-Motor Carrier

3

Safety Administration Drug & Alcohol Clearinghouse that Plaintiff failed to pass a drug screening, he lost his employment with Sweet Express, thereby incurring damages in excess of $75,000.

## II.  Discussion

### A.  Federal-Law Claim

Plaintiff's first, third, fourth, and fifth causes of actions all allege claims under Title II.[1] Defendant brings its motion to dismiss the Title II claims on several grounds.[2]

#### 1.  Lack of Jurisdiction

Defendant first contends that the Court lacks jurisdiction over this action. A motion to dismiss under Rule 12(b)(1) for lack of jurisdiction may come in the form of either a "facial attack" or a "factual attack." *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009). A facial attack "questions merely the sufficiency of the pleading." *Id.* at 376.

> "[W]hen reviewing a facial attack, a district court takes the allegations in the complaint as true.... If those allegations establish federal claims, jurisdiction exists." However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

*Id.* (internal citations omitted). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Here, Defendant's motion presents a facial challenge because it relies on the absence of an allegation in the complaint that Plaintiff gave state or local authorities the required notice before filing the instant action.

---

[1] Plaintiff's second cause of action alleges psychological trauma damage. While psychological trauma might be a separate element of damage, it is not a separate cause of action.

[2] Defendant also contends that the complaint is subject to dismissal under Rule 12(b)(4) for insufficient process because Plaintiff named the wrong Defendant. While Defendant's argument has merit, Plaintiff's failure could be addressed by the filing of an amended complaint. Because more substantial grounds for dismissal exist, I do not address merits of the argument.

Title II prohibits discrimination on the basis of race, color, religion, or national origin in certain places of public accommodation. 42 U.S.C. § 2000a(a). Title II authorizes an action for injunctive relief for violation of this prohibition. 42 U.S.C. § 2000a-3. In certain circumstances, before filing an action, a Plaintiff must comply with the following provision:

> In the case of an alleged act or practice prohibited by this subchapter which occurs in a State, or political subdivision of a State, which has a State or local law prohibiting such act or practice and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no civil action may be brought under subsection (a) before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person . . . .

42 U.S.C. § 2000a-3(c). Defendant contends that the complaint must be dismissed because the State of Michigan has a law prohibiting discrimination in a place of public accommodation and Plaintiff fails to allege that he gave the required notice.

Michigan does have a law—the Michigan Elliott-Larsen Civil Rights Act (MELCRA)—prohibiting discrimination on the basis of race, color, religion, or national origin in places of public accommodation. Mich. Comp. Laws. § 37.2302. In addition, MELCRA establishes the Michigan Civil Rights Commission and the Department of Civil Rights (MDCR), which are authorized to receive, investigate, and dispose of, charges alleging violations of MELCRA. Mich. Comp. Laws § 37.2601, 37.2602. Plaintiff does not allege that he provided the required notice to the MDCR, and he does not dispute in his response that he failed to give the required notice. (ECF No. 8 at PageID.79–80.) In fact, Plaintiff could not have complied with the statutory requirement set forth above, as he alleges that the incident occurred on April 18, 2023, and he filed his complaint on April 26, 2023, less than two weeks later.

Some courts have construed the notice requirement as jurisdictional. *See Amaefuna v. Gamsby*, No. 1:22-CV-211, 2023 WL 2637423, at *3 (E.D. Tenn. Mar. 24, 2023) (finding "the

notice requirement . . . jurisdictional") (citing *S.G. v. CBL & Assocs. Mgmt., Inc.*, No. 1-09-cv-83, 2010 WL 743731, at *2 (E.D. Tenn. Feb. 26, 2010)); *Paschal v. Doctors Assocs.*, No. 4:17cv1635, 2017 WL 4155768, at *2 (N.D. Ohio Sept. 19, 2017) (same) (citing *Halton v. Great Clips, Inc.*, 94 F. Supp. 2d 856, 860–61 (N.D. Ohio 2000)); *Jackson v. Murray State Univ.*, No. 5:11-CV-24, 2012 WL 3644839, at *6 (W.D. Ky. Aug. 24, 2012) (same). If this requirement is jurisdictional, dismissal is required.

Other courts, however, have concluded, or at least suggested, that the notice requirement is not jurisdictional, but rather an exhaustion requirement. *See Strober v. Payless Rental Car*, 701 F. App'x 911, 913 n.3 (11th Cir. 2017) (citing Section 2000a-3(c) and noting that "[t]o bring a viable claim under Title II, a plaintiff must first exhaust state or local administrative remedies, if such remedies are available"); *Brown v. Whole Foods Market Grp., Inc.*, 789 F.3d 146, 153 (D.C. Cir. 2015) (holding that Section 2000a-3(c) is not a jurisdictional prerequisite because Congress has not treated the notice requirement as jurisdictional); *Zinman v. Nova Se. Univ., Inc.*, No. 21-CV-60723, 2021 WL 4025722, at *5–6 (S.D. Fla. Aug. 30, 2021), *report and recommendation adopted*, 2021 WL 4226028 (S.D. Fla. Sept. 15, 2021) (finding that "Title II's notice provision . . . 'is not of jurisdictional cast'") (quoting *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850 (2019)); *Domino v. Kentucky Fried Chicken*, No. 19-cv-8499, 2020 WL 5847306, at *3 (N.D. Cal. Oct. 1, 2020) (construing the notice requirement as a "mandatory claim-processing rule" rather than a "jurisdictional prerequisite"). The Sixth Circuit has not addressed the issue.

I find the cases concluding that Section 2000a-3(c) is a claim-processing rule rather than a jurisdictional prerequisite to suit more persuasive, particularly in light of the Supreme Court's admonition that "when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Ft. Bend Cnty.*, 139 S. Ct. at 1850 (quoting

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503–04 (2006)). Thus, Plaintiff's failure to allege compliance with the statute would not constitute a ground for dismissal, as exhaustion is an affirmative defense that generally must be presented in a summary judgment motion. *See Zappley v. The Stride Rite Corp.*, No. 2:09-CV-198, 2010 WL 234713, at *4 (W.D. Mich. Jan. 13, 2010). Nonetheless, other grounds support dismissal.

### 2.      Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

Plaintiff's Title II claims are subject to dismissal under Rule 12(b)(6) because he seeks a remedy not available under the statue and because Defendant's facilities do not qualify as a "public accommodation" under the statute. First, Plaintiff seeks only an award of "damages to cover mental rehabilitation not limited to the traumatized mental, mental illness, mental insecurity paranoia and character defamation [he] is suffering from." (ECF No. 1 at PageID.25.) Yet, the only remedy Title II authorizes is injunctive relief. 42 U.S.C. § 2000a-3(a); *see Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401–02 (1968) ("A Title II suit is . . . private in form only. When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority."); *Watson v. Fraternal Order of Eagles*, 915 F.2d 235 (6th Cir. 1990) (noting that "Title II entitles successful plaintiffs to injunctive relief only"). Plaintiff does not request relief available under Title II, so the Title II claim is properly dismissed. *Chaney v. Fitzpatrick Acquisitions, LLC*, No. 1:15-cv-672, 2016 WL 703808, at *3 (W.D. Mich. Jan. 29, 2016). Neither Plaintiff's pro se status, nor the Fourteenth Amendment, both of which he cites (ECF No. 8 at PageID.83–84), cure this defect in his claim.

The claim also fails because Defendant's drug screening facilities do not qualify as a place of public accommodation. Section 2000a(b) specifies three categories of public accommodation: (1) inns and hotels; (2) restaurants and lunch counters; and (3) theaters and places of exhibition or entertainment. 42 U.S.C. § 2000a(b). The statute also lists a fourth category that covers:

> [a]ny establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

8

Defendant's drug screening facilities do not fall within any of these categories. Plaintiff contends that Defendant's facilities qualify as covered establishments because they "offer[] seating, air conditioning, drinking water, and restrooms to the customers." (ECF No. 8 at PageID.86.) As Defendant notes, the closest statutory category that matches Plaintiff's assertion is "any restaurant, cafeteria, lunch counter, [or] soda fountain," but Plaintiff does not allege that Defendant is "principally engaged in selling food for consumption on the premises." 42 U.S.C. § 2000a(b)(2). Plaintiff's effort to pigeon-hole Defendant's business into one of the narrowly-defined categories under the statute falls far short of the mark. *See Ford v. Surprise Family Urgent Care Ctr.*, No. 10-1920, 2011 WL 13137866, at *2 (D. Ariz. Sept. 6, 2011) (noting that "courts have interpreted the definition of places of public accommodation relatively narrowly, generally adhering to the three categories outlined in the statute: lodgings, restaurants, and entertainment facilities").

Accordingly, I recommend that Plaintiff's Title II claim be dismissed.[3]

### B.     State-Law Claim

Defendant urges the Court to decline to exercise supplemental jurisdiction over Plaintiff's defamation claim, but as noted above, Plaintiff has alleged diversity jurisdiction as an independent basis for subject matter jurisdiction. Therefore, I address Defendant's argument that Plaintiff fails to state a claim for defamation.

To state a cause of action for defamation under Michigan law, a plaintiff must allege:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of

---

[3] As Defendant notes, Plaintiff mentions the Fourth Amendment in his response. (ECF No. 8 at PageID.89.) Plaintiff has not pled a Fourth Amendment claim in his complaint, and even if he had pled such claim, it would lack merit because Plaintiff has not plausibly alleged facts demonstrating that Defendant is a state actor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) (noting that to properly allege a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant acted under color of law).

9

    special harm (defamation per se) or the existence of special harm caused by publication.

*Smith v. Anonymous Joint Enter.*, 487 Mich. 102, 113 (2010).

    Plaintiff's defamation claim is subject to dismissal because he fails to satisfy several of the required elements. First, Plaintiff fails sufficiently to allege that Defendant or its employees made a false statement. Under Michigan law, "a plaintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff claims to be defamatory." *Sarkar v. Doe*, 318 Mich. App. 156, 180 n. 13 (2016) (brackets and internal quotation marks omitted) (quoting *Ghanam v. Does*, 303 Mich. App. 522, 543 (2014)). More specifically, "a defamation plaintiff must plead with specificity who published the defamatory statement, when it was published, and, most importantly, a plaintiff must identify the precise materially false statement published." *Rouch v. Enquirer & News of Battle Creek Mich.*, 440 Mich. 238, 272 (1992) (Riley, J. concurring) (citing *MacGriff v. Van Antwerp*, 327 Mich. 200, 204–05 (1950)).

    The defamation claim is set forth in Plaintiff's sixth cause of action. (ECF No. 1 at PageID.23–24.) Plaintiff's defamation claim can be construed as asserting two statements: (1) a statement by someone at the Holland location to someone at the Breton Road location that Plaintiff had a "device"; and (2) Defendant "type[d], enter[ed,] and upload[ed]" "false pretense information" to the DOT, which caused Sweet Express to terminate his employment. Regarding the first statement, Plaintiff does not allege that it was false. That is, he does not allege that he was not wearing a "device." Rather, he alleges only that "no device was found."[4] (ECF No. 1 at

---

[4] Defendant asserts in its brief that there is "ample video evidence of the device" (ECF No. 7 at PagID.48), and attaches as Exhibit A to its brief a "still" from the video. The "still" does indeed appear to show that Plaintiff had some sort of device attached to his body. Defendant does not argue, however, that the Court may consider this "still" in deciding the motion to dismiss. In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue. Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019)

PageID.12.) Moreover, Plaintiff does not allege the content of the "false pretense information" to the DOT, nor does he allege why it was false.

Second, Plaintiff fails to allege that the statements were unprivileged. In fact, both of the communications Plaintiff alleges were subject to qualified privilege. "The elements of a qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only." *Prysak v. R.L. Polk Co.*, 193 Mich. App. 1, 15 (1992). "Qualified privilege protects the speaker from the defamation claim if 'the speaker had an interest or duty to communicate otherwise defamatory statements to those having a corresponding interest or duty, whether of a legal, moral or social character.'" *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 867–68 (6th Cir. 2020) (quoting *Dadd v. Mount Hope Church*, 486 Mich. 857, 861 (2010) (Markman, J., concurring in part and dissenting in part)).

As to the first alleged statement by an employee at the Holland location to an employee at the Breton location that Plaintiff had a device on his person, an employee of a drug-screening business who suspects a driver of attempting to falsify a drug screen has an interest and duty to communicate that information to another employee with a corresponding duty to prevent the driver

---

(noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings") (citing *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)). Nonetheless, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). The Sixth Circuit has also indicated that a court may consider a video if it is mentioned in the complaint. *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386–87 (6th Cir. 2017). Although Plaintiff mentions surveillance video in the complaint, it is not clear whether he refers to this particular video. (ECF No. 1 at PageID.10.) In any event, because Defendant does not contend that the "still" of the video is properly considered, I have not considered it in determining whether Plaintiff has stated a claim.

from submitting a false test sample. *See Rondigo, L.L.C. v. Township of Richmond*, 522 F. App'x 283, 287 (6th Cir. 2013) ("The defendants had an interest, if not a duty, to communicate with their co-workers and the plaintiffs' neighbors to facilitate the investigation"); *cf. Tumbarella v. The Kroger Co.*, 85 Mich. App. 482, 494 (1978) ("An employer has the qualified privilege to defame an employee by publishing statements to other employees whose duties interest them in the subject matter, such as those employees responsible for hiring and firing."). Thus, qualified privilege would cover the statement between employees.

As to the second statement, which Plaintiff alleges Defendant made to the DOT, the regulations promulgated by the Federal Motor Carrier Safety Administration provide a qualified privilege to persons who provide such information, unless they knowingly furnish false information. 49 C.F.R. § 391.23(l); *see Johnson v. J.B. Hunt Trans., Inc.*, No. 3:09CV1352, 2010 WL 3069547, at *3 (N.D. Ohio Aug. 2, 2010) (noting that Section 391.23(l) creates a qualified privilege that be overcome by a showing of actual malice). If a qualified privilege exists, the plaintiff must prove actual malice to succeed on the claim. *Tumbarella*, 85 Mich. App. at 494. That is, the plaintiff must show "that the communication was made with knowledge of its falsity or with reckless disregard for the truth." *Id.* (citing *Peisner v. Detroit Free Press, Inc.*, 82 Mich. App. 153, 163–64 (1978), and *Brunn v. Weiss*, 32 Mich. App. 428, 431 (1971)). Here, Plaintiff fails to allege any facts—or even legal conclusions—indicating that Defendant made either of the alleged statements with actual malice. *See Ryniewicz*, 803 F. App'x at 868 ("Ryniewicz did not provide any support for her conclusory statement that Clarivate made defamatory remarks about her 'with the knowledge of the falsity of the statements or in reckless disregard of their truth or falsity.'").

Finally, as to the third element, Plaintiff fails to allege any facts indicating that the alleged communications were at least negligently made. Consequently, Plaintiff fails to adequately allege a defamation claim.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendant's Motion to Dismiss (ECF No. 7), and dismiss the complaint **with prejudice**.

Dated: August 3, 2023
      /s/ Sally J. Berens
      SALLY J. BERENS
      U.S. Magistrate Judge

## NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).